IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICHARD ALLEN YEAGER, #264 071,   )
                                 )
     Plaintiff,                 )
                                 )
     v.                         )   CIVIL ACTION NO. 1:18-CV-526-WKW
                                 )           [WO]
HENRY BUTCH BINFORD, *et al.*,    )
                                 )
     Defendants.             )

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

### I.   INTRODUCTION[1]

     Richard Yeager, an Alabama inmate proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action complaining that he was unconstitutionally denied participation in the Veterans Treatment Court and the Veterans Justice Outreach/Health Care Reentry Program offered by the Veterans Administration and Justice Department ,or other approved alternative to probation revocation, in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Revenue Sharing Act.[2] For relief, Yeager requests compensation for loss of social security

---

[1] Although the Clerk stamped the complaint "filed" on May 23, 2018, Yeager signed his complaint on May 21, 2018. The law is settled that a *pro se* inmate's complaint is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir.1993). The court, therefore, considers May 21, 2018, as the filing date of the complaint.

[2] Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." *See* 29 U.S.C. § 794. Section 122 of the State and Local Fiscal Assistance Act of 1972, as amended ("Revenue Sharing Act"), 31 U.S.C. § 1242, prohibits discrimination as provided in 29 U.S.C. § 794 by recipients of federal revenue sharing funds. Title II of the ADA and the Rehabilitation Act apply to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998).

disability income while incarcerated,[3] damages, injunctive relief, and a declaratory judgment.[4] The named defendants are Judge Henry Binford, Mayor Mark Saliba, Mayor Billy Helms, Game Warden Joe Carroll, Game Warden Larry Doster, Henry County Recorder Karen Scott, Houston County Recorder Jackie Culpepper, Houston County Commission Chairman Mark Culver, Henry County Commission Chairman David Money, Administrative Director Randy Helms, District Attorney Patrick Jones, and former District Attorney Douglas Valeska. Upon review, the court concludes this case is due to be summarily dismissed prior to service of process under 28 U.S.C. § 1915(e)(2)(B).[5]

## II.   DISCUSSION

### A.   Standard of Review Under 28 U.S.C. § 1915(e)(2)(B) [6]

Because Yeager is proceeding *in forma pauperis*, the court reviews his complaint under 28 U.S.C. § 1915(e)(2)(B).   Under § 1915(e)(2), a court is required to dismiss a complaint proceeding

---

[3] 42 U.S.C. § 402(x) provides that Social Security retirement benefits shall not be paid for any month any part of which the beneficiary is incarcerated for conviction of a felony or any crime that carries a term of imprisonment more than one year. *See Andujar v. Bowen*, 802 F.2d 404, 405 (11th Cir. 1986) (finding that § 402(x)(1) is constitutional and does not violate due process).

[4] In accordance with the prior orders and proceedings in this matter, Yeager's request for class certification was denied. Docs. 6, 9. To the extent the complaint contains claims broadly alleging violations of the rights of other disabled veterans or military service members, Yeager lacks standing to assert the constitutional rights of other persons. *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), *citing United States v. Raines*, 362 U.S. 17, 22 (1960) ("[A] litigant may only assert his own constitutional rights or immunities."); *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir. 1987).

[5] To the extent Yeager seeks to challenge the adequacy of mental health services or conditions at his present place of confinement (Doc. 1 at 13), such claims should be presented in a separate lawsuit.

[6] Yeager sought leave to proceed *in forma pauperis*. Doc. 2.  The court granted Yeager *in forma pauperis* status except to the extent that he was required to pay an initial partial filing fee. Doc. 3. Yeager filed the required initial partial filing fee. Doc. 5. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

*in forma pauperis* if it determines that an action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it "has little or no chance of success," that is, when it appears "from the face of the complaint that the factual allegations are clearly baseless or that the legal theories are indisputably meritless."[7] *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993); *accord Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (stating that a claim is frivolous "where it lacks an arguable basis either in law or in fact"). A claim is frivolous if it "lacks an arguable basis in law or fact." *Neitzke*, 490 U.S. at 325. A claim is frivolous as a matter of law where, among other things, the defendants are immune from suit, *id*. at 327, the claim seeks to enforce a right that clearly does not exist, *id*., or there is an affirmative defense that would defeat the claim, such as the statute of limitations, *Clark v. Georgia Pardons & Paroles Bd*., 915 F.2d 636, 640 n.2 (11th Cir. 1990). Courts are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. A complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)).

---

[7] A complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**B.      Claim Barred by the Statute of Limitations.**

Yeager complains that in March of 2016 his request to be considered for participation in the Veterans Treatment Court program or other alternative prison program was denied. Yeager's challenge to conduct which occurred in March of 2016 is filed outside the statute of limitations applicable to a federal civil action filed in this court under 42 U.S.C. § 1983.

> All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985). [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years. Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations period began to run.

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

The events relating to Yeager's claim occurred in March of 2016. The limitations period begins to run when the cause of action accrues, and this is a question of federal law. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). Generally, a cause of action accrues when the plaintiff knows or has reason to know (1) that he was injured, and (2) who inflicted the injury. *Id*. at 561–62. By its express terms, the tolling provision of *Ala. Code* § 6-2-8(a) provides no basis for relief to Yeager from application of the time bar.[8]  Thus, the statute of limitations began to run on the claims arising from the challenged conduct in March of 2016. The limitation period ran uninterrupted until it expired, at the latest, on March 31, 2018. Yeager filed this action on May 21, 2018. This filing occurred over one year after expiration of the limitation period.  Thus, the statute of limitations on those claims Yeager presents regarding actions that occurred in March of 2016,

---

[8]This section allows tolling of the limitations period for an individual who "is, at the time the right accrues ... insane...."  *Ala. Code* § 6-2-8(a).  The complaint demonstrates Yeager was not legally insane at the time of the challenged events so as to warrant tolling under *Ala. Code* § 6-2-8(a).

expired, at the latest, by March 31, 2018, and review of these claims is, therefore, barred by the two-year period of limitations.

To be sure, the statute of limitations is usually a matter which may be raised as an affirmative defense. The court notes, however, that in an action proceeding *in forma pauperis* under section 1983, it may consider, *sua sponte*, affirmative defenses apparent from the face of the complaint. *Clark v. Georgia Pardons and Parole Board*, 915 F.2d 636, 640 n.2 (11th Cir. 1990); *see also Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990). "[I]f the district court sees that an affirmative defense would defeat the action, a section 1915[(e)(2)(B)(i)] dismissal is allowed." *Clark*, 915 F.2d at 640. "The expiration of the statute of limitations is an affirmative defense the existence of which warrants dismissal as frivolous. *See Franklin [v. State of Oregon]*, 563 F. Supp. [1310,] 1330, 1332 [(D.C. Oregon 1983)]." *Id*. at n.2.

> An early determination of the merits of an IFP proceeding provides a significant benefit to courts (because it will allow them to use their scarce resources effectively and efficiently), to state officials (because it will free them from the burdens of frivolous and harassing litigation), and to prisoners (because courts will have the time, energy and inclination to give meritorious claims the attention they need and deserve). "We must take advantage of every tool in our judicial workshop." *Spears [v. McCotter]*, 766 F.2d [179, 182 (5th Cir. 1985)].

*Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

Based on the facts apparent from the face of the complaint, Yeager has no legal basis on which to challenge to the conduct of Defendants denying him entry into a diversion program in March of 2016, as Yeager filed this cause of action over two years after the challenged conduct occurred.  As noted, the statutory tolling provision is unavailing. Consequently, the two-year period of limitations applicable to Yeager's claim expired prior to his filing the instant complaint, and the claim is, therefore, subject to dismissal as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). *See Clark*, 915 F.2d 636.

**C.   Judge Binford**

**1. Damages**

Yeager challenges Judge Binford's decision to revoke his probation rather than approve him for a prison diversion program, alleging that the decision violated his constitutional rights, including his right to equal protection and his rights under the ADA and Rehabilitation Act. Yeager's allegations against this judicial defendant emanate from actions taken by him in his judicial capacity during state court proceedings over which he had jurisdiction.  A state judge is absolutely immune from civil liability for acts taken pursuant to his or her judicial authority. *Forrester v. White*, 484 U. S. 219, 227-229 (1988); *Paisey v. Vitale in and for Broward County*, 807 F.2d 889 (11th Cir. 1986); *Stump v. Sparkman*, 435 U.S. 349 (1978).  Thus, a judge is entitled to absolute judicial immunity from damages for those acts taken while he was acting in his judicial capacity unless he acted in the "clear absence of all jurisdiction." *Id.* at 356–57; *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996) (same). Where Yeager seeks damages from Judge Binford in his official capacity, those efforts are foreclosed by the Eleventh Amendment. While the doctrine of judicial immunity applies to claims against Judge Binford in his individual capacity, he is entitled to Eleventh Amendment immunity for claims asserted against him in his official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ((holding in a damages action that neither a state nor its officials acting in their official capacities are "persons" subject to suit under section 1983).

A review of the complaint reflects that Yeager's contact with Judge Binford was in his judicial capacity. Yeager's state court action was before Judge Binford when he entered the orders and adverse rulings which Yeager challenges as violative of his rights. The first portion of the

*Stump* immunity test, which requires that the judge be acting in his judicial capacity, is satisfied. *Simmons*, 86 F.3d at 1085.

The second component under the *Stump* test looks at whether a judge acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 357; *Jenkins v. Clerk of Court*, 150 Fed. App'x. 988, 990 (11th Cir. 2005). Yeager challenges the manner in which Judge Binford handled the state court criminal proceedings pending before him while he was engaged in normal judicial functions. For judicial immunity purposes, an act is done in "clear absence of all jurisdiction" if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which he presides. *Dykes v. Hosemann*, 776 F.2d 942, 946–47 (11th Cir. 1985) (en banc). Judges cannot be sued for money damages for performing judicial acts, even when the acts result in unfairness and injustice to a litigant. *Mireles v. Waco*, 502 U.S. 9 (1991). Even if a judicial defendant "conspired with [another] party to violate [Yeager's] constitutional rights," he would be immune. *Dykes*, 776 F.2d at 946 (internal quotes omitted); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The fact that it is alleged that the judge[s] acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity."). "A judge's actions are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" *Mireles,* 502 U.S. at 12. Judicial immunity is not intended to protect or benefit a malicious or corrupt judge; rather, it is intended to protect the important public interest in maintaining an environment in which judges can do their jobs without fearing harassment by unsatisfied litigants. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). "[A] judicial act does not become less judicial by virtue of an allegation of malice, corruption, or conspiracy." *Sisk v. United States*, 2007 WL 1963000, at *3 (W.D. La. June 4, 2007) *Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice.").

Distilled to their essence, Yeager's allegations against Judge Binford flow from his dissatisfaction with the actions this defendant took in his capacity as a state court judge in matters over which he had subject matter jurisdiction. Yeager's challenges to the judicial defendant's alleged acts or omissions, even if those actions were incorrect under applicable state law, nevertheless amount to challenges to "judicial actions" for which Judge Binford is absolutely immune in this proceeding. *See Stump*, 435 U.S. at 363-64 (holding that judicial immunity extends to judicial acts that may contain error). The law protects the judicial defendant from having to defend this lawsuit. In light of the foregoing, claims for monetary damages against Judge Binford are due to be summarily dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii). *Neitzke*, 490 U.S. at 327.

## 2.   Request for Declaratory/Injunctive Relief from State Court Action

### a. Non-Final Orders

To the extent Yeager seeks relief from adverse decisions issued by a state court that are not yet final, he is not entitled to relief on such claims as there is an adequate remedy at law. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) ("In order to receive declaratory or injunctive relief, plaintiff[] must establish that there was a [constitutional] violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law."). Specifically, Yeager can appeal orders issued by the state court to the appropriate higher state court. Since state law provides an adequate remedy for Yeager to challenge non-final orders, he is "not entitled to declaratory or injunctive relief in this case." *Id.* at 1243.

### b. Final Orders

Regarding claims presented by Yeager challenging the constitutionality of orders issued by any state court which have become final under state law, this court lacks jurisdiction to render such judgment in an action filed under 42 U.S.C. § 1983. "The *Rooker-Feldman* doctrine prevents

. . . lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.' *Exxon Mobil Corp. V. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)." *Lance v. Dennis*, 546 U.S. 459, 460 (2006).  Although "*Rooker-Feldman* is a narrow doctrine," it remains applicable to bar Yeager from proceeding before this court, as this case is "brought by [a] state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  544 U.S. at 284, 125 S.Ct. [at] 1517." *Id.* at 464; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (federal district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."). Moreover, a § 1983 action is inappropriate either to compel or to appeal a particular course of action by a state court.  *Datz v. Kilgore*, 51 F.3d 252, 254 (11th Cir. 1995) (§ 1983 suit arising from alleged erroneous decisions of a state court is merely a prohibited appeal of the state court judgment); *see also Rolleston v. Eldridge*, 848 F.2d 163 (11th Cir. 1988).

"[O]nce a case is litigated in state court, a federal district court does not have jurisdiction to review it."[9]  *Schmitt v. Schmitt*, 324 F.3d 484, 486 (7th Cir. 2003).  While Yeager couches his claims in terms of a constitutional violation, the essence of his lawsuit concerns adverse rulings he

---

[9] In *Schmitt*, the court held:

> We have interpreted *Rooker-Feldman* to ask whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim.  Put another way, if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then *Rooker-Feldman* controls, and the lower federal courts lack jurisdiction over the claim.  It does not matter that the state court judgment might be erroneous or even unconstitutional.

324 F.3d at 486.

received in state court actions. These claims are "inextricably intertwined with the merits of . . . state-court judgment[s]," because Yeager's federal claims succeed "only to the extent that the state court[s] wrongly decided the issues before [them]." *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id*. In light of the foregoing, the court concludes that summary dismissal of any requests seeking declaratory or injunctive relief against the judicial defendant regarding matters associated with Yeager's state court criminal proceedings is appropriate under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Clark*, 915 F.2d 636; *see also Neitzke*, 490 U.S. at 327.

## D.     District Attorneys Doug Valeska and Patrick Jones

Yeager names former District Attorney Doug Valeska and District Attorney Patrick Jones as defendants. It is clear he seeks to challenge actions undertaken by the prosecution during proceedings which culminated with the trial court's revoking his probation and imposing a sentence of imprisonment upon him. The claims against these defendants provide no basis for relief.

"[A] prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate."); *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) ("[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties."); *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002) ("A prosecutor is entitled to absolute immunity for all actions

he takes while performing his function as an advocate for the government."). The absolute immunity afforded prosecutors protects against "impair[ing] the performance of a central actor in the judicial process." *Malley v. Briggs*, 475 U.S. 335, 343 (1986).  Absolute immunity from § 1983 liability is afforded to all conduct of a prosecutor that is "intimately associated with the judicial phase of the criminal process," which includes representing the State's interests during the sentencing phase of the process. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430-431).

Any actions of Defendants Valeska and Jones relevant to the instant complaint relate to roles each of these defendants undertook "as an advocate for the state" in proceedings associated with activities intimately associated with the judicial phase of the criminal process—conduct for which these defendants are entitled to absolute immunity. *Buckley*, 509 U.S. at 273; *Burns*, 500 U.S. at 493.  Thus, Yeager's claim for monetary damages against former District Attorney Valeska and District Attorney Patrick Jones are due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii). Moreover, as previously determined, Yeager is entitled to no declaratory or injunctive relief in this § 1983 complaint regarding the actions of the trial court in revoking his probation. *See also Newman v. Alabama*, 683 F.2d 1312 (11th Cir. 1982).

## E.    Conspiracy

Yeager alleges that Defendants conspired to send him to prison, which he describes as a dumping ground for mental health disabled veterans, rather than place him in a diversion program as an alternative to incarceration. Yeager further claims Defendants engaged in a conspiracy to refuse him accommodations for his disability-related needs in violation of his ADA and rehabilitation rights.

To establish a § 1983 conspiracy, "a plaintiff must show among other things, that the defendants reached an understanding to violate [his] rights." *Rowe*, 279 F.3d at 1283 (internal quotation marks and citation omitted) (brackets in original). "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Board of County Comm'rs of Alachua County,* 956 F.2d 1112, 1122 (11th Cir. 1992). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality. . . [T]hey must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Bell Atlantic Corp.  v. Twombly*, 550 U.S. 544, 577 (2007). The mere stringing together of events, without a showing of contacts demonstrating that an understanding was reached, is not sufficient. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Similarly, vague and conclusory conspiracy allegations are subject to dismissal. *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984).

The court has carefully reviewed Yeager's claims of conspiracy.  His assertions are purely conclusory allegations that fail to assert the material facts necessary to establish a conspiracy by the defendant state actors. Yeager alleges no facts suggesting a conspiracy or an agreement other than contending that Defendants had a common goal, scheme, or purpose to violate his constitutional rights by denying his request to participate in a prison diversion program and, instead, revoking his probation and sending him to prison. His mere use of the word "conspired" regarding the actions of Defendants about which he complains, however, is insufficient to state a conspiracy claim, nor do his allegations allow the court to draw the conclusion that a conspiracy claim is plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citation omitted) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Fullman*, 739 F.2d at 556-57 (finding that a pleading that

offers no more than a conclusion does not state a claim for relief). This claim is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

## F.    The Challenge to Plaintiff's Probation Revocation

Yeager challenges the constitutionality of his confinement upon the revocation of his probation by a state court in November of 2017. Some claims set forth by Yeager, by their very nature, arise under 42 U.S.C. § 1983. The gist of Yeager's claims presented to this court, however, allege violations of his constitutional rights and federal laws which go to the fundamental legality of his probation revocation and resulting incarceration and, therefore, presently provide no basis for relief in this cause of action.[10] *Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

Applicable federal law establishes that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481, *citing Preiser*, 411 U.S. at 488-490. In *Heck*, the Supreme Court expounded on *Preiser* in holding that claims for damages challenging the legality of a prisoner's conviction or confinement, even where the prisoner has exhausted available remedies, are not cognizable in a 42 U.S.C. § 1983 action "unless and until the conviction or sentence is reversed [by a state court], expunged [by executive order], invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must therefore be dismissed. 512 U.S. at 489. The relevant

---

[10] This includes Yeager's claims of equal protection violations as well as his other constitutional and ADA and Rehabilitation Act claims challenging denial of his request for placement in a Veterans Treatment Program due to his disabled and/or veteran status because granting relief on these claims would necessarily imply the invalidity of the trial court's revocation of his probation and its imposition of the sentence Yeager is serving.

inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487.

In *Balisok*, the Court further determined that a prisoner's "claim for [both] declaratory relief and money damages, . . . that necessarily imply the invalidity of the punishment imposed, [punishment which impacted the duration of his confinement,] is not cognizable under § 1983" unless the challenged judgment has previously been overturned. 520 U.S. at 648. The Court determined that this is true not only when a prisoner challenges the judgment as a substantive matter but also when "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id*. at 645. The Court emphasized "that a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id*. at 649. The rule of *Heck* is not limited to a request for damages but is equally applicable to an inmate's request for declaratory relief. "It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction [or probation revocation]; if he makes allegations that are inconsistent with the conviction's [or revocation of probation] having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), *citing Balisok*, 520 U.S. at 646-648. An inmate "cannot seek to accomplish by a section 1983 declaratory judgment what he must accomplish solely through a writ of habeas corpus." *Jones v. Watkins*, 945 F. Supp. 1143, 1151 (N.D. Ill. 1996); *Miller v. Indiana Dept. of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996) (Under *Heck*, "[t]he [determinative] issue . . . is not the relief sought, but the ground of the challenge."). *Heck* directs that a state inmate "making a collateral attack on his conviction [or probation revocation] . . . may not do that in a civil suit, other than a suit under the habeas corpus statute."). *Okoro*, 324 F.3d at 490. *See Abella v. Rubino*, 63 F.3d 1063, 1066 (11th Cir. 1995) (claims for declaratory or injunctive relief seeking actions by a federal court which would affect

14

either the validity of the prisoner's conviction or the duration of his sentence "are simply not cognizable under § 1983."); *Offet v. Solem*, 823 F.2d 1256, 1258 (8th Cir. 1987) (in determining whether favorable decision in § 1983 action would establish "irrefutable" habeas claim, court not bound by plaintiff's characterization of claim). In 2005, "the Supreme Court reviewed its prior holdings in this area and summarized that a state prisoner's § 1983 action is barred (absent previous invalidation [of his conviction or sentence])—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Robinson v. Satz*, 260 Fed. App'x. 209, 212 (11th Cir. 2007) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)) (internal quotations omitted).

The claims presented by Yeager question the constitutionality of his probation revocation and the resulting sentence imposed upon him by the state court in November of 2017. A judgment for Yeager on the claims presented would undermine the validity of his probation revocation. It is clear from the complaint that the revocation of probation and resulting sentence about which Yeager complains have not been invalidated in an appropriate state or federal civil action. *Heck* and its progeny therefore bar Yeager's use of any federal civil action, other than an application for habeas corpus relief, to pursue his claims that Defendants violated his rights as alleged in this § 1983 complaint until he can show that his probation revocation is legally invalidated on constitutional grounds through a writ of habeas corpus or other available means. *Abella*, 63 F.3d at 1066 n. 4 ("*Heck* clarifies that *Preiser* is a rule of cognizability, not exhaustion."); *Dyer v. Lee*, 488 F.3d 876, 880 (11th Cir. 2007) (*citing Preiser*, 411 U.S. at 490) ("Allowing § 1983 to do the work of habeas would create an end-run around the procedures of § 2254."); *Wilkinson*, 544 U.S. at 81 ("Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need

to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody."). "Even a prisoner who has fully exhausted [all] available ... remedies has no cause of action under § 1983 unless and until the conviction ... is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489; *see also Jones v. Stevenson*, 2003 WL 22533565 at *1 (N.D. Cal. Nov. 4, 2003) (finding plaintiff cannot challenge the validity of his confinement based on parole revocation hearing on grounds that the hearing violated his constitutional rights and rights provided by the ADA until parole board's decision is reversed, expunged, set aside or otherwise called into question); *Raines v. Florida*, 983 F. Supp. 1362, 1375-76 (N.D. Fla. 1997) (finding class action members' claim for damages for the "gain time" they did not receive due to their medical grade allegedly in violation of the ADA was not cognizable absent a ruling invalidating the denial of gain time through a writ of habeas corpus). Consequently, this collateral attack on the revocation of Yeager's probation in 2017 and resulting imprisonment is prohibited and subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Plaintiff's claims challenging events which occurred in March of 2016 be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) because Plaintiff failed to file this action within the time prescribed by the  applicable statute of limitations;

2.    Plaintiff's complaint against Defendant Binford be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii);

3.     Plaintiff's complaint for damages against Defendants Valeska and Jones be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii);

4.     Plaintiff's conspiracy claim against Defendants be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii);

5.     Plaintiff's challenges to the constitutionality of his probation revocation in November 2017 and the resulting sentence on which he is presently incarcerated be DISMISSED without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as these claims are not properly before the court at this time;

6.     This case be DISMISSED prior to service of process under 28 U.S.C. § 1915(e)(2)(B)(i–iii).

It is further

ORDERED that **on or before October 24, 2018**, Plaintiff may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which Plaintiff objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 10th day of October, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge